ZAHN ET AL. *v.* INTERNATIONAL PAPER CO.

No. 72–888.  Argued October 16, 1973—Decided December 17, 1973

WHITE, J., delivered the opinion of the Court, in which BURGER, C. J., and STEWART, BLACKMUN, POWELL, and REHNQUIST, JJ., joined. BRENNAN, J., filed a dissenting opinion, in which DOUGLAS and MARSHALL, JJ., joined, *post,* p. 302.

*Peter F. Langrock* argued the cause and filed a brief for petitioners.

*Taggart Whipple* argued the cause for respondent. With him on the brief were *Richard E. Nolan, William H. Levit, Jr., Nicholas R. Weiskopf,* and *George W. Ray, Jr.**

MR. JUSTICE WHITE delivered the opinion of the Court.

Petitioners, asserting that they were owners of property fronting on Lake Champlain in Orwell, Vermont,

---

*Norman Redlich* and *Stanley Buchsbaum* filed a brief for the city of New York as *amicus curiae* urging affirmance.

brought this action in the District Court on behalf of a class consisting of themselves and 200 lakefront property owners and lessees. They sought damages from International Paper Co., a New York corporation, for allegedly having permitted discharges from its pulp and paper-making plant, located in New York, to flow into Ticonderoga Creek and to be carried by that stream into Lake Champlain, thereby polluting the waters of the lake and damaging the value and utility of the surrounding properties. The suit was brought as a diversity action, jurisdiction assertedly resting on 28 U. S. C. § 1332 (a)(1). The claim of each of the named plaintiffs was found to satisfy the $10,000 jurisdictional amount, but the District Court was convinced "to a legal certainty" that not every individual owner in the class had suffered pollution damages in excess of $10,000. Reading *Snyder* v. *Harris,* 394 U. S. 332 (1969), as precluding maintenance of the action by any member of the class whose separate and distinct claim did not individually satisfy the jurisdictional amount and concluding that it would not be feasible to define a class of property owners each of whom had more than a $10,000 claim, the District Court then refused to permit the suit to proceed as a class action. 53 F. R. D. 430 (Vt. 1971). A divided Court of Appeals affirmed, 469 F. 2d 1033 (CA2 1972), principally on the authority of *Snyder* v. *Harris, supra.* We granted the petition for writ of certiorari, 410 U. S. 925 (1973).

The Court of Appeals correctly held that this case is governed by the rationale of this Court's prior cases construing the statutes defining the jurisdiction of the District Court. We therefore affirm its judgment.

From the outset, Congress has provided that suits between citizens of different States are maintainable in the district courts only if the "matter in controversy"

exceeds the statutory minimum, now set at $10,000. 28 U. S. C. § 1332 (a).[1] The same jurisdictional-amount requirement has applied when the general federal-question jurisdiction of the district courts, 28 U. S. C. § 1331 (a), is sought to be invoked.[2] A classic statement of the dichotomy that developed in construing and applying

---

[1] The section provides in pertinent part that:

"(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and is between—

"(1) citizens of different States . . . ."

Section 11 of the First Judiciary Act of 1789 set the jurisdictional amount in diversity suits at $500. 1 Stat. 78. In 1801, Congress lowered the requirement to $400 in the Midnight Judges Act, 2 Stat. 89, 92, but it was quickly restored to $500 the following year. 2 Stat. 132. The jurisdictional-amount requirement remained fixed at this level until the Act of Mar. 3, 1887, 24 Stat. 552, when it was raised to $2,000. The figure was subsequently increased by $1,000 by the Act of Mar. 3, 1911, § 24, 36 Stat. 1091. See S. Rep. No. 388, 61st Cong., 2d Sess., pt. 2, pp. 30–32 (1910); H. R. Rep. No. 818, 61st Cong., 2d Sess. (1910); Conference Report, S. Doc. No. 848, 61st Cong., 3d Sess. (1911); 45 Cong. Rec. 3596–3599 (1910); 46 Cong. Rec. 4002, 4003, 4004 (1911).

The current $10,000 jurisdictional amount, codified in 28 U. S. C. § 1332 (a), was enacted by the Act of July 25, 1958, 72 Stat. 415. The legislative history discloses that the change was made "on the premise that the amount should be fixed at a sum of money that will make jurisdiction available in all substantial controversies where other elements of Federal jurisdiction are present. The jurisdictional amount should not be so high as to convert the Federal courts into courts of big business nor so low as to fritter away their time in the trial of petty controversies." S. Rep. No. 1830, 85th Cong., 2d Sess., 3–4 (1958); see also id., at 21; H. R. Rep. No. 1706, 85th Cong., 2d Sess., 3 (1958).

[2] Section 1331 (a) provides:

"(a) The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States."

these sections is found in *Troy Bank* v. *G. A. White-head & Co.*, 222 U. S. 39, 40–41 (1911):

"When two or more plaintiffs, having separate and distinct demands, unite for convenience and economy in a single suit, it is essential that the demand of each be of the requisite jurisdictional amount; but when several plaintiffs unite to enforce a single title or right, in which they have a common and undivided interest, it is enough if their interests collectively equal the jurisdictional amount."

This distinction and rule that multiple plaintiffs with separate and distinct claims must each satisfy the jurisdictional-amount requirement for suit in the federal courts were firmly rooted in prior cases dating from 1832,[3] and have continued to be the accepted construction

---

[3] The following are representative of innumerable cases confirming this principle: *Woodside* v. *Beckham*, 216 U. S. 117 (1910); *Waite* v. *Santa Cruz*, 184 U. S. 302, 328–329 (1902); *Wheless* v. *St. Louis*, 180 U. S. 379, 382 (1901); *Bernards Township* v. *Stebbins*, 109 U. S. 341, 355 (1883). Cf. *Clay* v. *Field*, 138 U. S. 464 (1891); *Russell* v. *Stansell*, 105 U. S. 303 (1882); *Seaver* v. *Bigelows*, 5 Wall. 208 (1867); *Stratton* v. *Jarvis*, 8 Pet. 4 (1834); *Oliver* v. *Alexander*, 6 Pet. 143 (1832).

*Snyder* v. *Harris*, 394 U. S. 332 (1969), noted that the judicial interpretation of "matter in controversy" to bar aggregation of separate and distinct claims dated back to at least *Oliver* v. *Alexander*, which is representative of the unbroken line of decisions of this Court interpreting our appellate jurisdiction when that jurisdiction was confined to review of lower court decisions in which the "matter in dispute" exceeded a designated monetary amount. Consistently, plaintiffs with separate and distinct claims could not aggregate their respective "matters in dispute" to bring an appeal to this Court. See, *e. g.*, *Stewart* v. *Dunham*, 115 U. S. 61, 64–65 (1885) (and cases cited therein). The original *Alexander* construction of our appellate jurisdiction was applied to the jurisdictional-amount requirement for federal trial courts in *Walter* v. *Northeastern R. Co.*, 147 U. S. 370, 373 (1893):

"Is the plaintiff entitled to join [all his actions] in a single suit

of the controlling statutes, now §§ 1331 and 1332.[4] The rule has been applied to forbid aggregation of claims where none of the claimants satisfies the jurisdictional amount, as was the case in *Scott* v. *Frazier*, 253 U. S. 243, 244 (1920), for example, where the Court stated the rule to be that "the amount in controversy must equal the jurisdictional sum as to each complainant." It also requires dismissal of those litigants whose claims do not satisfy the jurisdictional amount, even though other litigants assert claims sufficient to invoke the jurisdiction of the federal court. *Clark* v. *Paul Gray, Inc.*, 306 U. S. 583 (1939); *Stewart* v. *Dunham*, 115 U. S. 61, 64–65 (1885); *Bernards Township* v. *Stebbins*, 109 U. S. 341, 355 (1883).

In *Clark* v. *Paul Gray, Inc.*, decided after the effective date of the Federal Rules of Civil Procedure in 1938, the Court applied the familiar rule that "when several plaintiffs assert separate and distinct demands in a single suit, the amount involved in each separate controversy must be of the requisite amount . . . , and . . . those amounts cannot be added together to satisfy jurisdictional requirements." 306 U. S., at 589. Upon ascertaining on its own motion that only one of the plaintiffs in the District Court had presented a claim satisfying the

___

in a Federal court, and sustain the jurisdiction by reason of the fact that the total amount involved exceeds $2,000? We think not. It is well settled in this court that when two or more plaintiffs, having several interests, unite for the convenience of litigation in a single suit, it can only be sustained in the court of original jurisdiction, or on appeal in this court, as to those whose claims exceed the jurisdictional amount; and that when two or more defendants are sued by the same plaintiff in one suit the test of jurisdiction is the joint or several character of the liability to the plaintiff."

[4] *Rogers* v. *Hennepin County*, 329 U. S. 621 (1916); *Title Guaranty Co.* v. *Allen*, 240 U. S. 136 (1916); *Pinel* v. *Pinel*, 240 U. S. 594, 596 (1916); *Scott* v. *Frazier*, 253 U. S. 243, 244 (1920); *Clark* v. *Paul Gray, Inc.*, 306 U. S. 583 (1939).

jurisdictional amount, the Court reached the merits of that claim but directed the District Court to dismiss the claims of all other plaintiffs for want of jurisdiction.

The same rules were applied to class actions contemplated by Fed. Rule Civ. Proc. 23. The spurious class action authorized by Rule 23 (a)(3), as it stood prior to amendment in 1966,[5] was viewed by Judge Frank, writing for himself and Judges Learned and Augustus Hand, as, "in effect, but a congeries of separate suits so that each claimant must, as to his own claim, meet the jurisdictional requirements." *Steele* v. *Guaranty Trust Co. of N. Y.,* 164 F. 2d 387, 388 (CA2 1947).[6] The direct precedent

---

[5] Rule 23 (a)(3) provided:

"If persons constituting a class are so numerous as to make it impracticable to bring them all before the court, such of them, one or more, as will fairly insure the adequate representation of all may, on behalf of all, sue or be sued, when the character of the right sought to be enforced for or against the class is

.     .     .     .     .

"(3) several, and there is a common question of law or fact affecting the several rights and a common relief is sought."

[6] "The spurious class suit was a permissive joinder device. . . .

"There was no jural relationship between the members of the class; unlike, for example, the members of an unincorporated association, they had taken no steps to create a legal relationship among themselves. They were not fellow travelers by agreement. The right or liability of each was distinct. The class was formed solely by the presence of a common question of law or fact. When a suit was brought by or against such a class, it was merely an invitation to joinder—an invitation to become a fellow traveler in the litigation, which might or might not be accepted. It was an invitation and not a command performance." 3B J. Moore, Federal Practice ¶ 23 10 [1], pp. 2601–2603 (2d ed. 1969).

Professor Moore thus recognized that the jurisdictional-amount requirements governing the joinder of separate and distinct claims applied to spurious class suits:

"These principles applied with equal force in the class action, since the class actions as constituted under original Rule 23 were but

for *Steele* was a 1941 decision in the same Circuit expressed in an opinion written by Judge Charles Clark, who, as a member of and Reporter for the Advisory Committee, was a principal architect of the Federal Rules of Civil Procedure. That case, *Hackner* v. *Guaranty Trust Co. of N. Y.*, 117 F. 2d 95 (CA2 1941), involved a class action brought on behalf of plaintiffs with separate and distinct claims. Judge Clark invoked a long line of authority in this Court, and in other courts, to hold that among parties related only by a common question of law and fact, "aggregation is improper" and that jurisdiction cannot be supplied for those without claims in the requisite amount "by adding a plaintiff who can show jurisdiction." *Id.*, at 98. (Citations omitted.) This was the accepted view in the federal courts with respect to class actions.[7] In consequence, district courts were to

procedural devices to permit some to prosecute or defend an action without the necessity of all appearing as plaintiffs or defendants." *Id.*, ¶ 23.13, p. 2957.

[7] *Alfonso* v. *Hillsborough County Aviation Authority*, 308 F. 2d 724 (CA5 1962); *Troup* v. *McCart*, 238 F. 2d 289 (CA5 1956); *Hughes* v. *Encyclopaedia Britannica*, 199 F. 2d 295 (CA7 1952); *Ames* v. *Mengel Co.*, 190 F. 2d 344 (CA2 1951); *Miller* v. *National City Bank of New York*, 166 F. 2d 723 (CA2 1948); *Matlaw Corp.* v. *War Damage Corp.*, 164 F. 2d 281 (CA7 1947); *Sturgeon* v. *Great Lakes Steel Corp.*, 143 F. 2d 819 (CA6 1944); *Black & Yates, Inc.* v. *Mahogany Assn.*, 129 F. 2d 227 (CA3 1942); *Woerter* v. *Orr*, 127 F. 2d 969 (CA10 1942); *Central Mexico Light & Power Co.* v. *Munch*, 116 F. 2d 85 (CA2 1940); *Independence Shares Corp.* v. *Deckert*, 108 F. 2d 51, 53 (CA3 1939), rev'd on other grounds, 311 U. S. 282 (1940); *Ames* v. *Chestnut Knolls, Inc.*, 159 F. Supp. 791 (Del. 1958); *Air Line Dispatchers Assn.* v. *California Eastern Airways*, 127 F. Supp. 521 (ND Cal. 1954); *Goldberg* v. *Whittier Corp.*, 111 F. Supp. 382 (ED Mich. 1953); *Schuman* v. *Little Bay Constr. Corp.*, 110 F. Supp. 903 (SDNY 1953); *Giesecke* v. *Denver Tramway Corp.*, 81 F. Supp. 957 (Del. 1949); *Koster* v. *Turchi*, 79 F. Supp. 268 (ED Pa.) aff'd, 173 F. 2d 605 (CA3 1948); *Shipley* v. *Pittsburgh & L. E. R. Co.*, 70 F. Supp.

entertain the claims of only those class action plaintiffs whose individual cases satisfied the jurisdictional amount requirement.

The meaning of the "matter in controversy" language of § 1332 as it applied to class actions under Rule 23 reached this Court in *Snyder* v. *Harris, supra,* the occasion being a division of opinion in the courts of appeals as to whether the 1966 amendments to Rule 23 had changed the jurisdictional-amount requirement of § 1332 as applied to class actions involving separate and distinct claims.[8]  None of the named plaintiffs and

---

870, 873, 874–875 (WD Pa. 1947); *Long* v. *Dravo Corp.,* 6 F. R. D. 226 (WD Pa. 1946); *Scarborough* v. *Mountain States Tel. & Tel. Co.,* 45 F. Supp. 176 (WD Tex. 1942); *Stevenson* v. *City of Bluefield,* 39 F. Supp. 462 (SD W. Va. 1941).

[8] The Court of Appeals for the Fifth Circuit held that there had been no change in the rule. *Alvarez* v. *Pan American Life Insurance Co.,* 375 F. 2d 992, cert. denied, 389 U. S. 827 (1967). The same result was reached in the Eighth Circuit in *Snyder* v. *Harris,* 390 F. 2d 204, 205 (1968), but a contrary ruling developed in the Tenth Circuit, *Gas Service Co.* v. *Coburn,* 389 F. 2d 831, 833–834 (1968). We granted the petitions for certiorari in the latter two cases and decided them together. *Snyder* v. *Harris,* 394 U. S. 332 (1969).

In *Snyder,* the named plaintiff was a shareholder of an insurance company who brought a diversity suit against the company's board of directors on behalf of herself and approximately 4,000 other shareholders. Although Mrs. Snyder's claim totaled only $8,740 in damages, she defended the motion to dismiss for lack of jurisdiction on the ground that if all 4,000 potential claims were aggregated, the amount in controversy would well exceed $10,000. The District Court held that the claims could not be aggregated, and the Court of Appeals affirmed. In the consolidated case, *Gas Service Co.* v. *Coburn,* a customer of petitioner public utility brought a diversity suit on behalf of himself and 18,000 other similarly situated consumers, alleging the illegal collection of a city franchise tax. The single named plaintiff's damages amounted to only $7.81, but the District Court allowed all the claims to be aggregated to satisfy

none of the unnamed members of the class before the Court alleged claims in excess of the requisite amount. It was nevertheless urged that in class action situations, particularly in light of the 1966 amendments to the rule, aggregation of separate and distinct claims should be permitted. The Court was of a contrary view, holding that class actions involving plaintiffs with separate and distinct claims were subject to the usual rule that a federal district court can assume jurisdiction over only those plaintiffs presenting claims exceeding the $10,000 minimum specified in § 1332. Aggregation of claims was impermissible, and the federal court was without jurisdiction where none of the plaintiffs presented a claim of the requisite size. The Court unmistakably rejected the notion that the 1966 amendments to Rule 23 were intended to effect, or effected, any change in the meaning and application of the jurisdictional-amount requirement insofar as class actions are concerned.

> "The doctrine that separate and distinct claims could not be aggregated was never, and is not now, based upon the categories of old Rule 23 or of any rule of procedure. That doctrine is based rather upon this Court's interpretation of the statutory phrase 'matter in controversy.' The interpretation of this phrase as precluding aggregation substantially predates the 1938 Federal Rules of Civil Procedure. . . . Nothing in the amended Rule 23 changes this doctrine. . . . The fact that judgments under class actions formerly classified as spurious may now have the same effect as claims brought under the joinder provisions is certainly no reason to treat

the jurisdictional-amount requirement. The Court of Appeals affirmed.

them *differently* from joined actions for purposes of aggregation." 394 U. S., at 336–337.

The Court also refused to reconsider its prior constructions of the "matter in controversy" phrase, concluding that it should not do so where Congress, with complete understanding of how the courts had construed the statute, had not changed the governing language and down through the years had continued to specify and had progessively increased the jurisdictional amount necessary for instituting suit in the federal courts.

None of the plaintiffs in *Snyder* v. *Harris* alleged a claim exceeding $10,000, but there is no doubt that the rationale of that case controls this one. As previously indicated, *Snyder* invoked the well-established rule that each of several plaintiffs asserting separate and distinct claims must satisfy the jurisdictional-amount requirement if his claim is to survive a motion to dismiss. This rule plainly mandates not only that there may be no aggregation and that the entire case must be dismissed where none of the plaintiffs claims more than $10,000 but also requires that any plaintiff without the jurisdictional amount must be dismissed from the case, even though others allege jurisdictionally sufficient claims.

This follows inescapably from the Court's heavy reliance on *Clark* v. *Paul Gray, Inc., supra,* where only one of several plaintiffs had a sufficiently large claim and all other plaintiffs were dismissed from the suit.[9] Moreover,

---

[9] The dissent recognizes that *Clark* requires the dismissal of any named plaintiff in an action whose case does not satisfy the jurisdictional amount. But apparently unnamed members of the class would enjoy advantages not shared by the named plaintiffs since their separate and distinct cases would be exempted from the jurisdictional-amount requirement. Why this should be the case and how this squares with *Clark* or with *Snyder* v. *Harris* are left unex-

the Court cited with approval the decision in *Alvarez* v. *Pan American Life Insurance Co.*, 375 F. 2d 992 (CA5), cert. denied, 389 U. S. 827 (1967), which was decided after the 1966 amendments to Rule 23 and which involved a class action with only one member of the class having a claim sufficient to satisfy § 1332. Only that claim was held within the jurisdiction of the District Court.

We conclude, as we must, that the Court of Appeals in the case before us accurately read and applied *Snyder* v. *Harris:* [10] Each plaintiff in a Rule 23 (b)(3) class action must satisfy the jurisdictional amount, and any plaintiff who does not must be dismissed from the case— "one plaintiff may not ride in on another's coattails." 469 F. 2d, at 1035.

Neither are we inclined to overrule *Snyder* v. *Harris* nor to change the Court's longstanding construction of the "matter in controversy" requirement of § 1332. The Court declined a like invitation in *Snyder* v. *Harris* after surveying all relevant considerations and concluding that to do so would undermine the purpose and intent of Congress in providing that plaintiffs in diversity cases must present claims in excess of the specified jurisdictional amount. At this time, we have no good reason to disagree with *Snyder* v. *Harris* or with the historic construction of the jurisdictional statutes, left undisturbed by Congress over these many years.

plained. We simply apply the rule governing named plaintiffs joining in an action to the unnamed members of a class, as *Snyder* v. *Harris* surely contemplated.

[10] The inevitability of this conclusion was suggested by the dissent in *Snyder* v. *Harris,* 394 U. S., at 343 (Fortas, J., dissenting). The same result was reached in *City of Inglewood* v. *City of Los Angeles,* 451 F. 2d 948, 952–954 (1971), by the Court of Appeals for the Ninth Circuit.

It also seems to us that the application of the jurisdictional-amount requirement to class actions was so plainly etched in the federal courts prior to 1966 that had there been any thought of departing from these decisions and, in so doing, of calling into question the accepted approach to cases involving ordinary joinder of plaintiffs with separate and distinct claims, some express statement of that intention would surely have appeared, either in the amendments themselves or in the official commentaries. But we find not a trace to this effect. As the Court thought in *Snyder* v. *Harris*, the matter must rest there, absent further congressional action.[11]

*Affirmed.*

MR. JUSTICE BRENNAN, with whom MR. JUSTICE DOUGLAS and MR. JUSTICE MARSHALL join, dissenting.

The Court holds that, in a diversity suit, a class action under Fed. Rule Civ. Proc. 23 (b)(3) is maintainable only when every member of the class, whether an appearing party or not, meets the $10,000 jurisdictional-amount requirement of 28 U. S. C. § 1332 (a). It finds this ruling compelled by the "rationale of this Court's prior cases construing the statutes defining the jurisdiction of the District Court." I disagree and respectfully dissent.

---

[11] Because a class action invoking general federal-question jurisdiction under 28 U. S. C. § 1331 would be subject to the same jurisdictional-amount rules with respect to plaintiffs having separate and distinct claims, the result here would be the same even if a cause of action under federal law could be stated, see *Illinois* v. *City of Milwaukee*, 406 U. S. 91, 98–101 (1972), or if substantive federal law were held to control this case. Of course, Congress has exempted major areas of federal-question jurisdiction from any jurisdictional-amount requirements, see 28 U. S. C. §§ 1333–1334, 1336–1340, 1343–1345, 1347–1358, 1361–1362, the exemption being so widely applicable, in fact, that the Court in *Snyder* v. *Harris*, 394 U. S., at 341, discounted the impact of its holding in federal cases.

The jurisdictional-amount provision of § 1332 (a) tersely states that "the matter in controversy [must exceed] the sum or value of $10,000 . . . ." Those words, substantially unchanged since the passage of the Judiciary Act of 1789,[1] apply to "civil actions," and say nothing about the requirements applicable to individual claimants and individual claims. Although Congress has several times altered the amount required,[2] generally upward,[3] it has left the task of defining those requirements to the judiciary.[4] The result has been a relatively

[1] Section 11, 1 Stat. 78. The First Judiciary Act used the term "matter in dispute," *ibid.*, and that phrase was retained until 1911, when the jurisdictional amount was increased from $2,000 to $3,000, Act of Mar. 3, 1911, § 24, 36 Stat. 1091, and the words "matter in controversy" were substituted.

[2] The amendments are catalogued in n. 1 of the Court's opinion.

[3] Adjustments for changes in the purchasing power of the dollar generally have been given as the explanation for this phenomenon. See, *e. g.*, S. Rep. No. 1830, 85th Cong., 2d Sess., 4 (1958):

"The present requirement of $3,000 has been on the statute books since 1911 and obviously the value of the dollar in terms of its purchasing power has undergone marked depreciation since that date. The Consumers Price Index for moderate income families in large cities indicates a rise of about 152 percent since 1913, shortly after the present $3,000 minimum was established. . . . Accordingly the committee believes that the standard for fixing jurisdictional amounts should be increased to $10,000."

See H. R. Rep. No. 1706, 85th Cong., 2d Sess., 3 (1958) (containing identical language). The only decrease, in 1801, is discussed in n. 1 of the Court's opinion.

[4] The only recent suggestion of congressional purpose is an oft-repeated statement in the legislative history of the 1958 amendments:

"The recommendations of the Judicial Conference [of the United States] regarding the amount in controversy, which this committee approves, is based on the premise that the amount should be fixed at a sum of money that will make jurisdiction available *in all substantial controversies* where other elements of Federal jurisdiction are present. The jurisdictional amount should not be so high as to

complex and sensitive set of rules designed to implement Congress' broad directive in a way that is responsive to the demands of fairness and efficiency in adjudication.

One "bright line" has emerged to control all § 1332 actions: there must be at least one plaintiff, or joint interest, seeking more than the statutory amount. *Snyder* v. *Harris*, 394 U. S. 332 (1969); *Troy Bank* v. *G. A. Whitehead & Co.*, 222 U. S. 39 (1911). The "long-standing" and "well established" rule on aggregation of claims that the Court invokes was developed to determine whether a group of claims was sufficiently inter-related to constitute such a "joint" claim or "common and undivided interest." [5]

---

convert the Federal courts into courts of big business nor so low as to fritter away their time in the trial of petty controversies." S. Rep. No. 1830, *supra*, at 3–4 (emphasis added); H. R. Rep. No. 1706, *supra*, at 3 (containing identical language).

[5] See *Troy Bank* v. *G. A. Whitehead & Co.*, 222 U. S. 39 (1911), and cases cited in n. 3 of the Court's opinion. The Court also observes, quite correctly, that the same rule on aggregation has been applied to the federal-question jurisdiction, 28 U. S. C. § 1331. But the assertion, in the Court's final footnote, that the same jurisdictional rules it announces for § 1332 will apply to § 1331, is even more questionable than its application of those rules in this case. The continued need for exercise of diversity jurisdiction, at least where a showing of prejudice is not made, has been challenged by respected authorities. See Wechsler, Federal Jurisdiction and the Revision of the Judicial Code, 13 Law & Contemp. Prob. 216, 234–240 (1948); Currie, The Federal Courts and the American Law Institute (pts. I & II), 36 U. Chi. L. Rev. 1, 268 (1968, 1969). Cf. S. Rep. No. 1830, *supra*, n. 3. But a sharply different view has been taken of the federal-question jurisdiction, and the Court has reflected that view in its decisions upholding the exercise of jurisdiction over pendent claims under state law. See *Mine Workers* v. *Gibbs*, 383 U. S. 715 (1966). Similarly significant disincentives to assertion of federal rights in federal forums are likely if claimants are barred from combining to reduce the time and cost of litigation.

Once jurisdiction has attached to the "action," however, the "aggregation" rule has been but one of several ways to establish jurisdiction over additional claims and parties. In this case, the claims of the named plaintiffs provided the District Court with jurisdiction over the diversity action. And petitioners make no argument inconsistent with the Court's holding that the theory of "joint" claims or interests will not support jurisdiction over the nonappearing members of their class. Their contention is rather that a second theory, ancillary jurisdiction, supports a determination that those claims may be entertained.

Ancillary jurisdiction to adjudicate claims that cannot be fitted within the aggregation rules has long been recognized by this Court, see *Freeman* v. *Howe*, 24 How. 450 (1861); *Phelps* v. *Oaks*, 117 U. S. 236 (1886); *Wichita R. & Light Co.* v. *Public Utilities Comm'n*, 260 U. S. 48 (1922). But, as one commentator has pointed out, the rules developed to control the exercise of that jurisdiction cannot be explained by "any single rationalizing principle." C. Wright, Federal Courts § 9, p. 21 (2d ed. 1970). They are instead accommodations that take into account the impact of the adjudication on parties and third persons, the susceptibility of the dispute or disputes in the case to resolution in a single adjudication, and the structure of the litigation as governed by the Federal Rules of Civil Procedure.[6]

---

[6] See Fraser, Ancillary Jurisdiction and the Joinder of Claims in the Federal Courts, 33 F. R. D. 27 (1963); H. Hart & H. Wechsler, The Federal Courts and the Federal System 1075–1081 (2d ed. 1973). Professor Kaplan, the Reporter for the 1966 amendments, has articulated his expectation that Rule 23 would be similarly accommodated:

"New rule 23 alters the pattern of class actions; subdivision (b)(3), in particular, is a new category deliberately created. Like other innovations from time to time introduced into the Civil Rules,

After consideration of these factors, the Court has sustained the exercise of ancillary jurisdiction over compulsory counterclaims under Rule 13 (a), *Horton* v. *Liberty Mutual Insurance Co.,* 367 U. S. 348 (1961), aff'g 275 F. 2d 148 (CA5 1960); *Moore* v. *New York Cotton Exchange,* 270 U. S. 593 (1926). It has also done so where a party's intervention was held to be a matter of right, as is now provided by Rule 24 (a), *Phelps* v. *Oaks, supra;* see 2 W. Barron & A. Holtzoff, Federal Practice & Procedure § 593 (C. Wright ed. 1961). Following this lead, the courts of appeals have sustained ancillary jurisdiction over cross-claims permitted by Rule 13 (g), *R. M. Smythe & Co.* v. *Chase National Bank,* 291 F. 2d 721 (CA2 1961); *Childress* v. *Cook,* 245 F. 2d 798 (CA5 1957); over impleaded defendants under Rule 14, *Pennsylvania R. Co.* v. *Erie Avenue Warehouse Co.,* 302 F. 2d 843 (CA3 1962); and over defendants interpleaded under Rule 22, *Walmac Co.* v. *Isaacs,* 220 F. 2d 108 (CA1 1955). See Developments in the Law—Multiparty Litigation in the Federal Courts, 71 Harv. L. Rev. 874 *passim* (1958).[7]

Class actions under Rule 23 (b)(3) are equally appropriate for such treatment. There are ample assurances,

---

those as to class actions change the total situation on which the statutes and theories regarding subject matter jurisdiction are brought to bear." Kaplan, Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure (I), 81 Harv. L. Rev. 356, 399–400 (1967).

[7] See also 7 C. Wright & A. Miller, Federal Practice & Procedure § 1756, pp. 564–565 (1972), approving as sound and "a natural corollary to other applications of the ancillary jurisdiction concept," a holding that only one representative party need meet the jurisdictional-amount requirement to support a class action in *Lesch* v. *Chicago & Eastern Illinois R. Co.,* 279 F. Supp. 908 (ND Ill. 1968).

in the provisions of the Rule that "the questions of law or fact common to the members of the class [must] predominate over any questions affecting only individual members,"[8] to guarantee that ancillary jurisdiction will not become a facade hiding attempts to secure federal adjudication of nondiverse parties' disputes over unrelated claims. And the practical reasons for permitting adjudication of the claims of the entire class are certainly as strong as those supporting ancillary jurisdiction over compulsory counterclaims and parties that are entitled to intervene as of right. Class actions were born of necessity.[9] The alternatives were joinder of the entire class, or redundant litigation of the common issues. The cost to the litigants and the drain on the resources of the judiciary resulting from either alternative would have been intolerable. And this case presents precisely those difficulties: approximately 240 claimants are involved, and the issues will doubtless call for extensive use of expert testimony on difficult scientific issues.

It is, of course, true that an exercise of ancillary jurisdiction in such cases would result in some increase in the federal courts' workload, for unless the class action is permitted many of the claimants will be unable to obtain any federal determination of their rights. But that objection is applicable to every other exercise of ancil-

---

[8] Rule 23 (b) (3). This Rule further states:

"The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action."

[9] See 3B J. Moore, Federal Practice ¶¶ 23.02 [1], 23.05 *passim* (2d ed. 1969).

lary jurisdiction. It should be a sufficient answer that denial of ancillary jurisdiction will impose a much larger burden on the state and federal judiciary as a whole, and will substantially impair the ability of the prospective class members to assert their claims.

If the State provides a class action device comparable to Rule 23 (b)(3), some of this inefficiency and unfairness may be avoided, but certainly not all. The named plaintiffs, and any other members of their class who can meet the jurisdictional-amount requirement, may choose to litigate those claims in the district courts, as these plaintiffs have shown to be their preference. Moreover, they will probably now be required separately to litigate the common issues in their cases,[10] thus possibly enlarging the federal judiciary's burden, and ironically reversing the Court's apparent purpose.

Moreover, if the State does not provide a Rule 23 (b)(3) device, litigation of the claims of class members who either lack the jurisdictional amount or simply prefer to litigate their claims in the state courts—as they would be free to do under any construction of the jurisdictional requirement—will produce a multitude of suits. And the chief influence mitigating that flood—the fact that many of these landowners' claims are likely to be worthless because the cost of asserting them on a case-by-case basis will exceed their potential value—will do no judicial system credit.

Not only does the practical desirability of sustaining ancillary jurisdiction bring Rule 23 (b)(3) class actions within the logic of our decisions, but the Court has long

---

[10] This is the probable consequence of the District Court's determination, after holding that each class member had to meet the jurisdictional-amount requirement, that it could find "no appropriate class over which [it had] jurisdiction." 53 F. R. D. 430, 433 (Vt. 1971); see *infra,* at 311–312.

since recognized that fact, and has sustained ancillary jurisdiction over the nonappearing members in a class action who do not meet the requirements of traditional rule of complete diversity laid down in *Strawbridge* v. *Curtiss,* 3 Cranch 267 (1806). In *Supreme Tribe of Ben Hur* v. *Cauble,* 255 U. S. 356 (1921), the Court not only held that only the original named plaintiffs and defendants had to satisfy the diversity requirements, but it also stated that intervention by nondiverse members of the class would not destroy the District Court's jurisdiction. *Id.,* at 366. Particularly in view of the constitutional background on which the statutory diversity requirements are written, see 469 F. 2d 1033, 1038 (CA2 1972) (Timbers, J., dissenting), it is difficult to understand why the practical approach the Court took in *Supreme Tribe of Ben-Hur* must be abandoned where the purely statutory "matter in controversy" requirement is concerned.

Certainly this result is not compelled by *Snyder* v. *Harris,* 394 U. S. 332 (1969), for that decision turned solely on whether federal diversity jurisdiction could be established over the "action." Nor can I accept the Court's contention that *Snyder*'s citation to *Clark* v. *Paul Gray, Inc.,* 306 U. S. 583 (1939), controls here. That case dealt only with the jurisdictional-amount requirements for the original named plaintiffs who litigated the case. Here petitioners clearly meet that requirement. *Snyder*'s characterization of *Clark* as a class action did not turn that case into a precedent for applying the jurisdictional-amount requirements to nonappearing class members who, so far as the Court indicated in *Clark,* were not even involved in that case.

It would be far more consistent with *Clark* for the Court to rule, as it did in *Supreme Tribe of Ben-Hur,* that only the original named plaintiffs must meet the jurisdictional requirements, and that nonappearing class mem-

bers and intervenors need not.   Such a ruling, while going a step farther than petitioners seek, would be reasonable and pragmatically justified.   There is a substantial difference between the impact on a case of an appearing party and a nonappearing class member, and intervention poses no threat since the district courts are given discretion by Rule 23 (d)(3) to permit intervention subject to appropriate conditions.   See 3B J. Moore, Federal Practice ¶ 23.73 (3), p. 1441 (2d ed. 1969).   The question in this case is not whether the class action must be permitted, but whether the District Court has the power to determine whether to permit it, taking into account the elaborate guidance and discretion provided by Rule 23.

The Court also appears to rely on *Snyder*'s rejection of "the notion that the 1966 amendments to Rule 23 were intended to effect, or effected, any change in the meaning and application of the jurisdictional amount requirement insofar as class actions are concerned." *Ante,* at 299.   *Snyder* based this rejection on Rule 82's admonition that the Federal Rules of Civil Procedure are not to be "construed to extend or limit the jurisdiction of the United States district courts . . . ."   Reliance on Rule 82 was proper there because the petitioner contended that the restructuring of Rule 23 to abolish "spurious" class actions in favor of a "functional" approach that took into account the nature of the litigation and its effects undercut this Court's long line of decisions establishing the minimum requirements for diversity jurisdiction over a "civil action."

But this case presents no suggestion that the 1966 amendments override the Court's decisions construing § 1332.   There are no earlier decisions construing the jurisdictional-amount requirements for the nonappearing members of a "spurious" class, probably because the old Rule did not bind members of the class unless they

affirmatively requested inclusion.[11] Nor did the 1966 amendments bring Rule 23 (b)(3) class actions within any other holdings. If anything, they merely made the determination whether the class should be permitted to turn more directly on the kinds of concerns that have motivated the exercise of ancillary jurisdiction.[12]

The question in this case ought, instead, to be whether changes in the Civil Rules may affect, and be affected by, the determination whether to exercise existing jurisdiction. Of course, they must. As the Reporter to the Advisory Committee on Civil Rules that prepared the 1966 amendments has observed: "From the start the Civil Rules, elaborating and complicating actions through joinder of claims and parties, have profoundly influenced jurisdictional result."[13] The Court's prior decisions upholding novel exercises of ancillary jurisdiction have made liberal use of the opportunities presented by the Civil Rules and amendments of them, and Rule 82 has stood as no bar to that action.

Indeed, the effects of today's decision will also be influenced by the form of Rule 23. The District Court, after ruling that ancillary jurisdiction could not be exercised, was confronted with a dilemma that did not exist prior to the 1966 amendments: identification of the members of the class that would be bound by the decision so that they could be provided the required notice.[14] After

---

[11] See Developments in the Law—Multiparty Litigation in the Federal Courts, 71 Harv. L. Rev. 874, 941–942 and cases cited n. 493 (1958).

[12] See Rules 23 (a)(1), (2), (3) and (b)(3)(A), (B), (C). Cf. H. Hart & H. Wechsler, *supra*, n. 6, at 1078. ("Under the revised rule, which contemplates that in a class action all members of the class not properly excluded will be bound by the judgment, the 'spurious' class action no longer exists, and ancillary jurisdiction may support intervention by class members in all cases.")

[13] Kaplan, *supra*, n. 6, at 400.

[14] Rules 23 (c)(2), (3).

determining that it was not possible to determine which of the 240 proposed members met the $10,000 requirement, the court denied class action status to all. But few, if any, Rule 23 (b)(3) classes will lend themselves to a determination, on the basis of the pleadings, that each proposed member meets that requirement. Intervention, at least for the purpose of establishing jurisdiction, may be necessary, and that is more than even the old Rule contemplated when it specified that class members had to request inclusion in order to be bound.

Thus, on the basis of the Court's implicit holding that ancillary jurisdiction would not support recognition of a Rule 23 (b)(3) class, the 1966 amendments will still influence the number of cases in which federal jurisdiction will be exercised. They will, as in this case, simply curtail the exercise of jurisdiction rather than expand it. In view of the Court's previous concern with practical realities in both its cases involving class actions and its cases involving the exercise of ancillary jurisdiction, I think that this limitation is both unwarranted and unwise.