**FUEL MERCHANT'S ASSOCIATION OF NEW JERSEY et al., Plaintiffs,**

**v.**

**UNITED STATES of America et al., Defendants.**

Civ. A. No. 74–480.

United States District Court,
D. New Jersey.
Aug. 6, 1974.

Lee B. Laskin, Cherry Hill, N. J., for the plaintiffs.

Jonathan L. Goldstein, U. S. Atty., Newark, N. J., by George L. Mittelholzer, Asst. U. S. Atty., for the United States.

William F. Hyland, Atty. Gen. of New Jersey, Trenton, N. J., by Carla V. Bello, Deputy Atty. Gen., for defendant N. J. Public Utilities Commission.

James B. Smith, Metuchen, N. J., for defendant Elizabethtown Gas Co.

Charles A. Lamby, Jr., by Roger M. Nelson, Newark, N. J., for defendant Public Service Electric & Gas Co.

John R. Sailer, Elizabeth, N. J., for defendant South Jersey Gas Co.

Gerald W. Conway, Newark, N. J., for defendant New Jersey Natural Gas Co.

## OPINION

COOLAHAN, District Judge.

Presently before the Court are motions by defendants (1) in opposition to plaintiffs' motion to convene a three-judge court, and (2) to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6), for failure to state a claim upon which relief can be granted.

Plaintiff Fuel Merchant's Association of New Jersey is a New Jersey corporation that, according to ¶ 4 of the complaint, represents ". . . all fuel and gasoline jobbers in the State of New

Jersey totaling approximately 800 in number." This action purports to be a class action brought under Fed.R.Civ.P. 23, on behalf on these jobbers. But see Zahn v. International Paper Co., 414 U. S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973) and Eisen v. Carlisle & Jacquelin, 416 U.S. 156, 94 S.Ct. 2140, 40 L.Ed. 2d 732 (1974). The class action aspects of this action aside, the plaintiff in the case at bar appears to be taking issue with the Emergency Petroleum Allocation Act of 1973, P.L. 93-159, 87 Stat. 627 ("the Act") and Executive Order 11748, 38 Fed.Reg. 33575, which pursuant to the Act delegated substantive rule-making authority to the Federal Energy Office ("FEO"). The FEO, in early 1974, issued a set of regulations ("regulations") ". . . governing the sale and distribution of all classes of petroleum products." Complaint ¶ 17. These regulations appear at 39 Fed.Reg. 1924.

Plaintiffs' first cause of action alleges that the statute, the executive order, and the regulations mandate that consumers of fuel oil must reduce their consumption by 15%, while users of "competing sources of energy (natural gas and electricity) are not subject to the same restriction." Complaint ¶ 20. Plaintiffs postulate that the supply of natural gas is decreasing and that natural gas suppliers (including the named defendants that supply natural gas), in response to this decrease, have diverted natural gas from ". . . their low profit industrial and governmental customers . . . " to "high profit residential users. . . . Complaint ¶ 21. This has resulted, according to plantiffs, in forcing the "low profit users" to switch to petroleum as a replacement fuel. The result of all this is that the "shortage of petroleum" is accentuated. Presumably, too, the petroleum jobbers' profits fall. Similar allegations are made concerning the electric utility companies.

Thus, according to plaintiffs, the FEO regulations comprise a regulation of petroleum without a regulation of "other forms or sources of energy." Complaint ¶ 25. This disparity, according to plaintiffs, violates the legislative intent of the Act (to promote economic efficiency, to protect the public health, safety and welfare, and to preserve an economically competitive petroleum industry, see § 4 (b)(1) of the Act). More importantly, according to plaintiffs, this disparity raises a question of constitutional dimension because it comprises a Fifth Amendment "taking" without due process of the petroleum jobbers' property interest in their businesses. Complaint ¶ 27. Plaintiff seeks (1) convening a three-judge court, 28 U.S.C. §§ 2282, 2284, (2) a declaratory judgment under 28 U.S.C. § 2201 that the Act and its attendant regulations are "unconstitutional and unenforceable," and (3) an order compelling the present administrator of the FEO to cease enforcing the Act.

Count two of the complaint is directed to the Board of Public Utilities Commissioners of the New Jersey Department of Public Utilities ("PUC"). The P. U.C., according to ¶ 30 of the complaint, permits natural gas suppliers to interrupt service to customers ". . . who are then required to switch to petroleum as an alternative source of energy." This is done arbitrarily, the complaint alleges, and as a result the petroleum jobbers and the Fuel Merchants' Association are damaged. Apparently, a claim is being made under the Fourteenth Amendment's equal protection clause. Demand is made that this Court (1) direct the PUC to refuse to allow suppliers of natural gas to interrupt service to those customers they presently serve, (2) enjoin natural gas suppliers from service interruptions, and (3) prohibit such suppliers from ". . . converting petroleum consumers to natural gas for a source of energy." Complaint ¶ 37(d). Other varied relief is also sought.

The Court has carefully scrutinized all pleadings submitted by the parties. Briefs have been submitted and oral argument was had on June 24, 1974. This Court is convinced that plaintiffs cannot

prevail on the theories advanced to support its claims. Gulf Oil Corp. v. Simon, 502 F.2d 1154 (Em.App.1974) states "[w]e have no doubt that the rational basis test is applicable here. *Cf.* Pacific Coast Meat Jobbers Assn., Inc. v. Cost of Living Council, 481 F.2d 1388, 1391 (Em. App.1973). FEO undertook to carry out the express mandate of Congress in section 4(a) of the Emergency Petroleum Allocation Act of 1973, 87 Stat. 627, that the President impose temporary mandatory allocations of available supplies of crude oil, residual fuel oil and refined petroleum products in amounts and at prices to be specified by regulations. At a time when this country was deprived of crude oil from important foreign sources and our total supply was substantially less than the immediate needs of refiners as well as consumers, it was not unreasonable for FEO to impose a scheme of allocation . . . ." 502 F.2d at 1155. *Gulf Oil* deals with a slightly different aspect of the petroleum-allocation regulations than that confronting this Court. But *Gulf Oil* makes clear the Temporary Emergency Court of Appeals' insistence on leaving the FEO unfettered to carry out its task of insuring an adequate supply of petroleum and other sources of energy. As stated in Mandel v. Simon, 493 F.2d 1239, 1240 (Em.App.1974), "[o]ur review of the present record convinces us that in implementing the petroleum allocation program to date, Appellants [the FEO] have been neither arbitrary nor capricious."

This Court is uncertain whether plaintiffs attack P.L. 93–159 as invalid on its face or only as applied. Similar uncertainty surrounds their attack upon the FEO regulations. What is certain is that plaintiffs take issue with the fact that the Act addresses itself to regulating prices and supplies in the petroleum industry alone, while not addressing itself to restrictions on suppliers of electricity and natural gas.

■ ■ This Court determines that such an exercise of Congressional power under the Commerce Clause does not violate due process, and that the State utility regulation does not violate equal protection. "[T]he power given to Congress to regulate . . . commerce is 'complete in itself, may be exercised to its utmost extent and acknowledges no limitations, other than are prescribed in the Constitution.' Gibbons v. Ogden, 22 U.S. 1, 9 Wheat. 1, 196, 6 L.Ed. 23. To hold that Congress in establishing its regulation is restricted to the making of uniform rules would be to impose a limitation which the Constitution does not prescribe. There is no requirement of uniformity in connection with the commerce power (Art. I, § 8, cl. 3 Const. U.S.C.A.) . . . . [The Fifth Amendment], unlike the Fourteenth, has no equal protection clause. . . . It is of the essence of the plenary power conferred that Congress may exercise its discretion in the use of the power." Currin v. Wallace, 306 U.S. 1, 13, 14, 59 S.Ct. 379, 386, 83 L.Ed. 441 (1939). As stated in *Currin*, 306 U.S. at 14, 59 S.Ct. at 386, "Congress may choose the commodities and places to which its regulation shall apply. Congress may consider and weigh relative situations and needs. Congress is not restricted by any technical requirement but may make limited applications and resort to tests so that it may have the benefit of experience in deciding upon the continuance or extension of a policy which under the Constitution it is free to adopt. As to such choices, the question is one of wisdom and not of power."

Congress may choose to regulate an industry in part. It follows that Congressional regulation of the petroleum industry is not defective because other enterprises such as natural gas or electricity are not regulated in the same way. United States v. Kissinger, 250 F. 2d 940, 942 (3d Cir. 1958) states, "[o]nce the question of constitutional power is answered in the affirmative the wisdom, need and effectiveness of a particular statute enacted in the exercise of that power is a question for the Congress not the courts."

702

Plaintiff's claims are devoid of merit. An order will be submitted dismissing the complaint for failure to state a claim upon which relief can be granted. Fed. R.Civ.P. 12(b)(6). The application for a three-judge court is denied and the complaint dismissed, because it appears ". . . to a certainty that the [plaintiffs are] not entitled to relief under any state of facts which could be proved in support of [their] claim." Supchak v. United States, 365 F.2d 844, 845 (3d Cir. 1966). No costs.