Cheryl A. **BAKER**, Parent and Natural Guardian of Jamie L. Curtis, A Minor, and Charles W. Curtis, A Minor, Plaintiffs,

v.

James **ABRAMS**, Esq., Administrator of the Estate of James M.S. Ullman, Esq. and George W. Beals, Esq. and Currier & Trask, P.A., Defendants.

No. 3:95 CV 2577 (GLG).

United States District Court, D. Connecticut.

June 28, 1996.

---

Joseph R. Galotti, Jr., Meriden, Connecticut, for Plaintiff, Cheryl A. Baker, Parent and Natural Guardian.

Thomas W. Boyce, Jr., Faulkner & Boyce, P.C., New London, Connecticut, for Defendant, George W. Beals.

Robert F. Maslan, Jr., DePanfilis & Vallerie, Norwalk, Connecticut, for Defendant, Currier & Trask, P.A.

## MEMORANDUM DECISION.

GOETTEL, District Judge.

The defendants in this action have moved to dismiss for lack of personal jurisdiction, for lack of subject matter jurisdiction, for improper venue and for failure to join an

indispensable party. The facts giving rise to these motions are not in dispute and are as follows: Charles W. Curtis was a resident of Maine when he was killed in a motor vehicle accident in that state. He apparently was unmarried at the time but had two former wives and four children, two by each wife. One of the former wives, Barbara Tingley of Maine, was appointed personal representative of his estate pursuant to Maine law. She retained the firm of Currier & Trask, P.A. (a Maine professional corporation of attorneys) to represent her in her estate capacity both in probate court and to pursue a wrongful death claim on behalf of the four minor children.

Cheryl A. Baker, the other former wife, resided in Connecticut with her two minor children. She retained a Connecticut attorney by the name of James M.S. Ullman to represent the interests of her minor children in connection with the wrongful death claim. Attorney Ullman in turn retained defendant, George W. Beals, Esq., a resident of Maine and a solo legal practitioner in that state, to represent the interests of Cheryl Baker's two children in the wrongful death action.

Ultimately the wrongful death case was settled in November of 1993 for the gross amount of $190,000. After deducting the costs and attorney's fees, each of the four children was to receive $30,633.17. Payments of that amount were made to Barbara Tingley's children who were by then adults. A check in the amount of $61,166.34, representing the total amount of the shares of the settlement intended for Jamie L. Curtis and Charles W. Curtis, II, both of whom were still minors, was sent by the Currier firm to Ms. Baker's attorney in Connecticut, James M.S. Ullman. The check was accompanied by a letter of transmittal from the Currier firm with instructions that Attorney Ullman was required:

> to hold these funds in [his] trust or escrow account pending receipt of appropriate guardianship orders from the Probate Court directing supervision of these funds and deposit to supervised bank accounts on behalf of these minor children.

> Under no circumstances are these funds to be negotiated or delivered until appropriate Court supervision is in place.

Plaintiff alleges that Attorney Ullman misappropriated those sums. She also claims that the Maine attorneys are responsible for that misappropriation through their negligence and breaches of contract.

Plaintiff initially commenced suit against the two sets of Maine attorneys and also against the Estate of James M.S. Ullman (he having died in the interim) by his Executor, James Abrams, Esq. The basis for federal jurisdiction was alleged to be diversity of citizenship. Defendants moved to dismiss on the same several grounds as aforesaid, plus the fact that the complaint lacked diversity jurisdiction since the citizenship of the Estate of Ullman was the same as the plaintiff's citizenship. Plaintiff's counsel then made a motion to drop Ullman's Estate and to file an amended complaint, which motion was granted and was followed by the amended complaint and the current motions to dismiss.

In support of the current motions, the Maine attorney defendants have established that they are solely practitioners in that state, are not admitted in the State of Connecticut and have never solicited or transacted business in Connecticut. The Currier firm further established that it did not represent this plaintiff in connection with the wrongful death action but rather represented Barbara Tingley, as personal representative of the decedent's estate. It is also clearly established that Cheryl A. Baker was not to receive any funds in her individual capacity and that her interest was limited to her capacity as custodian or guardian of the estate of each child. Under the aforesaid facts, it is clear that the motions of both sets of defendants (doc. nos. 18 and 21) must be granted.

### THE COURT LACKS PERSONAL JURISDICTION OVER THE MAINE ATTORNEYS

 Personal jurisdiction over foreign corporations and citizens of other states is limited both by state statute and constitutional considerations (minimum contacts). As it pertains to corporations, the Connecticut Long–Arm Statute (Gen.Stat. § 33–411(c))

allows jurisdiction over foreign corporations which transact business in the state under certain circumstances, and also out of contracts made in the state or to be performed in the state, business solicited in the state (if done repeatedly) and for tortious conduct in the state. With respect to individuals, Conn. Gen.Stat. § 52–59b(a) provides for personal jurisdiction over non-residents who transact business within the state, commit a tortious act within the state, or commit a tortious act outside the state causing injuries to persons within the state, if the person regularly does or solicits business in the state or expects the act to have consequences in the state and derives substantial revenue from interstate or international commerce.

■ The Maine attorneys did not transact business in the State of Connecticut. Currier & Trask was not involved in any contract with the plaintiff[1] and Attorney Beal's agreement was made by mail with Connecticut Attorney Ullman. There is no indication that any of the Maine attorneys solicited business in Connecticut or committed any tortious conduct within the state.

Plaintiff argues that the attorneys committed tortious acts within the State of Connecticut since the transaction was not completed until Ullman's wrongful misappropriation of the settlement check occurred in Connecticut. The fallacy of that argument is that Ullman's estate is not a party to this litigation and there is no allegation of a conspiracy. To the extent that defendants are accused of negligence in sending (or allowing to be sent) the settlement funds to attorney Ullman, there is nothing to indicate that they derived substantial revenue from interstate or international commerce.

■ The party seeking to invoke jurisdiction bears the burden of establishing that personal jurisdiction exists. *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir.1985); *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir.1981).

Unless an evidentiary hearing is held, however, the plaintiff need make only a *prima facie* showing that jurisdiction exists. *Hoffritz, supra; Marine Midland Bank, supra.* Nevertheless, even construing all pleadings and affidavits filed in this action in the light most favorable to the plaintiff, we find that the plaintiff has failed to carry her burden of making a *prima facie* showing of personal jurisdiction over the Maine attorney defendants. Indeed, with respect to out-of-state attorneys, the Connecticut Supreme Court has found an absence of personal jurisdiction under Connecticut's long-arm statute, C.G.S.A. § 52–59b, over an out-of-state attorney who had represented a plaintiff in litigation filed in another state, even though the attorney attended a meeting in Connecticut. *Rosenblit v. Danaher*, 206 Conn. 125, 537 A.2d 145 (1988).[2]

Plaintiff argues that the Maine attorneys violated Connecticut probate law by settling the case in Maine without the approval of the probate court in Connecticut and forwarding the plaintiff's share to her Connecticut attorney without the approval of the Connecticut probate court. Plaintiff has misinterpreted a part of Connecticut probate law which applies only to Connecticut decedents, and overlooks the fact that the Maine attorneys had neither the authority nor the license to obtain appointments of guardianship in the State of Connecticut. Moreover, the Currier firm in Maine was representing only Barbara Tingley, the personal representative of the estate, which was entirely a Maine matter.

### THE COURT LACKS SUBJECT MATTER JURISDICTION

■ The plaintiff seeks damages in the amount of $61,266.34 and attorney's fees, that being the aggregate net proceeds of the settlement for her two minor children combined. However, there is no basis for aggregating the two claims, and the amount in controversy for either claim does not exceed $50,000. Each child was entitled to some-

---

1. The complaint alleges rather vaguely that Currier & Trask entered into a contract with the plaintiff. Their only "contract," if it could be called such, was the agreement to cooperate with Mr. Beals in the prosecution of the wrongful death action in Maine.

2. No claim has been made here that any of the Maine attorneys travelled to Connecticut with respect to this case although Attorney Beals offered to make such a trip if Attorney Ullman thought it necessary.

thing less than $31,000.[3] The Connecticut courts have no basis on which to alter the amount paid to each child since their shares were distributed directly from the Maine estate of the decedent.

Additionally, Plaintiff has no independent claim to the money. Plaintiff's claim that she is a real party in interest is frivolous. She sues as guardian and would have no rights to the funds (except by order of the Court to be spent for the benefit of the children). Ms. Baker is merely a nominal party. If either child had reached majority, the child could assert his claim separately. Indeed the two older children by the first wife received their payments directly from the estate under the settlement.

■ Claims of two or more plaintiffs may not be aggregated unless such claims involve a single title or right in which those plaintiffs have a common interest. *Zahn v. International Paper Co.*, 414 U.S. 291, 294, 94 S.Ct. 505, 508, 38 L.Ed.2d 511 (1973); *Clark v. Gray*, 306 U.S. 583, 589, 59 S.Ct. 744, 748, 83 L.Ed. 1001 (1939). Even claims by two children of a decedent in an undivided tract of real property cannot be aggregated. *Pinel v. Pinel*, 240 U.S. 594, 36 S.Ct. 416, 60 L.Ed. 817 (1916). There is clearly no basis for aggregating the claims of the two minor children here.

Plaintiff argues that in certain types of cases aggregation of claims to meet the jurisdictional requirement is appropriate, citing *Troy Bank v. G.A. Whitehead & Co., Inc.*, 222 U.S. 39, 40, 32 S.Ct. 9, 9, 56 L.Ed. 81 (1911). However, the portion of that case relied upon by plaintiff makes it clear that when several plaintiffs unite to enforce a single right it must be one in which they have a common and undivided interest. *Id.* at 41, 32 S.Ct. at 9. Here, the interests of the two children are clearly divided. Each has an interest in one-half of the settlement proceeds, not an indivisible one-half interest in the whole. Had the monies been received, the mother, as guardian, would have been required to maintain two separate accounts, one for the benefit of each child.

■ Plaintiff may not aggregate their claims. When alleging jurisdiction, the "identifying characteristic of a common and undivided interest is that if one plaintiff cannot or does not collect his share, the shares of the remaining plaintiffs are increased." *Sellers v. O'Connell*, 701 F.2d 575, 579 (6th Cir.1983). Even though the "rights or liabilities arose out of the same transaction, or have a relation to a common fund ... such distinct demands or liabilities cannot be aggregated." *Robison v. Castello*, 331 F.Supp. 667, 668 (E.D.La.1971) (citations omitted).

Plaintiff argues further that it is inconceivable that the Court would or could determine the issues in this case on behalf of one of the minors while failing to consider them as they pertain to the other. That is totally untrue. If one of the children had achieved majority, he could enforce his own claim separately in any manner in which he wished. Consequently the amount in controversy with respect to each child's claim is insufficient to sustain this Court's subject matter jurisdiction.

### THE VENUE FOR THIS ACTION IS IMPROPER

Title 28 U.S.C. § 1391 provides in part that a civil action founded on diversity may be brought only in a judicial district:

(1) where any defendant resides if all the defendants reside in the same state;

(2) where a substantial part of the events or omissions giving rise to the claim occurred; or

(3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

■ As we have already noted, the defendants are not subject to personal jurisdiction

---

**3.** Even taking the largest amount claimed by the plaintiff, $94,199.60, which also includes a recovery of the attorney's fees paid to the Maine attorneys out of the gross settlement, each child's share of $47,099.80 is still less than the $50,000 jurisdictional amount required by 28 U.S.C. § 1332(a).

in this District, nor do any of them reside in this state. Moreover, the only events which occurred in this state are those involving the late Attorney Ullman, events which occurred after the defendants had completed their involvement in the matter. The current defendants did nothing within the State of Connecticut. Ullman's wrongdoing cannot be imputed to the Maine attorneys who, based on the facts before this Court, did nothing improper whatever. Consequently venue in this action is improper and the action must be dismissed. 28 U.S.C. § 1406.

### CONCLUSION

For all three of the foregoing reasons, the defendants' motions to dismiss (doc. nos. 18 and 21) are GRANTED and the action is in all respects dismissed.[4]

---

4. Because of the foregoing disposition, we do not find need to consider the additional argument that the estate of Ullman is an indispensable party to this litigation which, if added, would also defeat diversity jurisdiction.