Jacob S. WILLIAMS, Plaintiff,

v.

William F. PERRY, Secretary of Defense, Defendant.

Civ. A. No. 1:CV–94–452.

United States District Court, M.D. Pennsylvania.

Feb. 17, 1995.

Keith E. Kendall, Harrisburg, PA, for Jacob S. Williams.

Robert R. Long, Jr., Assistant U.S. Attorney, Lewisburg, PA, for Les Aspin.

Robert R. Long, Jr., Assistant U.S. Attorney, Lewisburg, PA, David M. Barasch, U.S. Attorney's Office, Harrisburg, PA, John D. Fritz, Defense Logistics Agency, New Cumberland, PA, for William F. Perry.

## MEMORANDUM

CALDWELL, District Judge.

We are considering the Defendant's motion to dismiss, or in the alternative, motion for summary judgment. Because the parties have submitted affidavits, depositions, and exhibits outside the pleadings, we will treat the motion as one for summary judgment.

### I. *Background*

This case arises from Plaintiff's employment at the Defense Distribution Region East ("DDRE") as a GS–4 Security Officer. Plaintiff, who is black, alleges that he was discriminated against during the course of his employment because of his race. The Defendant, William F. Perry, is the Secretary of the United States Department of Defense.[1]

Plaintiff contacted the DDRE Equal Employment Opportunity ("EEO") Office on March 18, 1992 concerning an incident involv-

---

1. Plaintiff was hired at the former New Cumberland Army Depot ("NCAD") in 1987. In 1991, the NCAD was merged with another depot to form the DDRE, at which point Plaintiff became an employee of the Defense Logistics Agency ("DLA"), which is an agency of the United States Department of Defense.

ing an employee of the commissary, Richard Nornhold. He claimed that he had been assigned as an armed escort for Nornhold on March 16, 1992, but that upon his arrival, Nornhold called Plaintiff's supervisor and stated that he did not "want this one" and that Plaintiff was "incompetent". Plaintiff filed a formal complaint with the EEO Office on May 6, 1992. After repeated requests by Plaintiff to resolve the complaint went unanswered, he retained counsel and requested a hearing on his complaint on October 11, 1993.

In the interim, Plaintiff contacted an EEO counselor with a pre-complaint containing additional allegations of discrimination. In his second complaint, he alleged that he was passed over for training for the position of Desk Sergeant, denied the opportunity to go to the health clinic during work hours, accused of leaving open a gate at the DDRE, and that someone put superglue in his personal lock, all because of his race. [Exh. 27 to Pl.'s Br. in Opp'n to S.J]. Plaintiff's complaints were consolidated and an investigator was assigned to explore all issues involved in both complaints. On January 18, 1994, he issued a report on his investigation. After no action was taken, this suit was initiated on March 28, 1994.

Plaintiff contends that during the course of his employment, he "has been the victim of a continuous pattern of racial discrimination and harassment ..." through: 1) the incident with Richard Nornhold; 2) the denial of training and promotion to the position of Desk Sergeant; 3) the refusal to allow him to have his blood pressure screened during duty hours; 4) the superglue in Plaintiff's personal lock and the alleged failure of his supervisor to adequately investigate the incident; 5) the failure of the EEO Office to investigate Plaintiff's complaints; and 6) a staged a confrontation with Plaintiff by the EEO manager in retaliation for filing the EEO complaint, which resulted in a one day disciplinary suspension. [Pl.'s Amended Compl. at ¶ 8(a)–(f) ]. Plaintiff advances three distinct claims of discrimination under Title VII: racial discrimination for non-promotion; retaliatory discrimination; and hostile work environment racial discrimination.

## II. Law and Discussion

### A. Standard for Summary Judgment

■ Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." F.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In reviewing the evidence, facts and inferences must be viewed in the light most favorable to the nonmoving party. *Matsushita Electric Industrial Co., Ltd., et al v. Zenith Radio Corp., et al*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538, 553 (1986).

■ When a moving party has carried his or her burden under Rule 56, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial' ", and summary judgment must be entered in favor of the moving party. *Matsushita*, 475 U.S. at 586–87, 106 S.Ct. at 1356, 89 L.Ed.2d at 552 (citations omitted).

### B. Racial Discrimination: Non–Promotion

■ In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the Supreme Court established the basic framework and burdens of proof in Title VII pretext actions. First, the plaintiff must establish a prima facie case of discrimination by a preponderance of the evidence. *Id.* at 802, 93 S.Ct. at 1824, 36 L.Ed.2d at 677. A prima facie case for failure to hire or promote is accomplished "by showing that [the plaintiff] is a member of a protected class; that [the plaintiff] was qualified for and rejected for the position; and that non-members of the protected class were treated more favorably." *Ezold v. Wolf, Block, Schorr and Solis–Cohen*, 983 F.2d 509, 522 (3d Cir.1992) (citation omitted), *cert. denied*, —— U.S. ——, 114 S.Ct. 88, 126 L.Ed.2d 56 (1993). If the plaintiff succeeds in proving a prima facie case, the employer must "articulate some legitimate, nondiscrim-

inatory reason" for its action. *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir.1994). If the employer carries its "relatively light burden by articulating a legitimate reason for the unfavorable employment decision, the burden of production rebounds to the plaintiff, who must now show by a preponderance of the evidence that the employer's explanation is pretextual (thus meeting the plaintiff's burden of persuasion)." *Id.* (parenthetical in original). To defeat a motion for summary judgment when the defendant has offered legitimate, non-discriminatory reasons for its actions, the plaintiff

> must submit evidence which: 1) casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication; or 2) allows the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action.

*Id.* at 764.

In this case, Plaintiff contends that he "was not selected for training and/or permanent promotion to the Desk Sergeant position, despite his seniority status and despite qualifications equal to, or greater than those trained and/or selected for promotion to Desk Sergeant." [Pl.'s Amended Compl. at ¶ 8(b) ]. In February, 1993, Chief Richard H. Snyder, who was in charge of hiring the new Desk Sergeant, announced that five officers, including Plaintiff, would be temporarily promoted to the position of Acting Desk Sergeant. Each officer, all of whom had previously applied for the promotion, was to assume the position on a forty-five day rotating basis, with Plaintiff's rotation being fifth. The Defendant contends that Plaintiff declined to accept his rotation because Chief Snyder would not assign someone to train him.[2] In opposition, Plaintiff asserts that he was never included in the rotation, and therefore was never afforded the opportunity to act as Desk Sergeant.

After the other four officers had completed their rotations, Chief Snyder posted a notice

soliciting volunteers to serve as Acting Desk Sergeant. When no one, including the Plaintiff, volunteered, Snyder assigned the same four officers to serve another rotation. [Affidavit of Richard H. Snyder, Exh. 2 to Def.'s Br. in Supp. of S.J.].

On July 12, 1993, the Plaintiff filed his second EEO pre-complaint, wherein he alleged, *inter alia,* that he was denied training for the Desk Sergeant's position. Thereafter, on October 5, 1993, Chief Snyder made a verbal offer to the Plaintiff to serve as Acting Desk Sergeant while applications were being solicited for the permanent position. After Plaintiff declined the opportunity, Snyder made a written offer to Plaintiff to serve as temporary Desk Sergeant, which he also rejected. On October 21, 1993, Ronald Varner, who is white, was selected for the position.

■ Defendant concedes that the Plaintiff has proved a prima facie case of discrimination, but offers numerous non-discriminatory reasons for the denial of promotion. First, Defendant claims that Varner was selected because he had previously volunteered to serve two 45 day shifts as Acting Desk Sergeant, whereas Plaintiff had declined the opportunity. Next, Defendant asserts that Chief Snyder, who made the decision to promote Varner, observed the work of both Varner and the Plaintiff and found Varner's work superior. Specifically, Snyder testified that Plaintiff had a record of discipline (five-day suspension) and had prepared inaccurate or incomplete reports, while Varner had no record of discipline and prepared accurate and complete reports. [Affidavit of Richard H. Snyder, Exh. 2 to Def.'s Br. in Supp. of S.J.]. In addition, Varner had higher evaluation ratings than the Plaintiff in the two periods immediately preceding the promotion. [Affidavit of Lisa K. Watkins, Exh. 6 to Def.'s Reply Br.]. Finally, Snyder relied on the recommendations of all three shift captains, each of whom recommended Varner for the position. [Affidavit of Richard H. Snyder, Exh. 2 to Def.'s Br. in Supp. of S.J.]. These are legitimate, non-discriminatory reasons for the denial of promotion, and return

**2.** None of the other candidates for the position were assigned a trainer. [Affidavit of Richard H. Snyder, Exh. 2 to Def.'s Br. in Supp. of S.J.].

the burden to Plaintiff to show that the reasons were pretextual or that discrimination was more likely than not the reason for discrimination. *See Fuentes*, 32 F.3d at 763.

### 1. *Were the reasons advanced by the Defendant for not promoting the Plaintiff pretextual?*

 Plaintiff argues that he was never given the opportunity to train for the position, and thus, the Defendant's purported reliance on his lack of experience was a pretext for discrimination. He contends that the rotation ended after the other four officers completed their turn and before he had a chance to serve as Acting Desk Sergeant. [Affidavit of Jacob Williams, Exh. 3 to Pl.'s Br. in Opp'n to S.J.]. In response, the Defendant asserts that Plaintiff declined his opportunity to serve as Desk Sergeant in the first rotation. [Affidavit of Richard H. Snyder, Exh. 2 to Def.'s Br. in Supp. of S.J.]. We agree that there is a factual dispute as to whether Plaintiff voluntarily chose not to participate in the first rotation. However, Plaintiff was subsequently provided an opportunity to serve a shift as Acting Desk Sergeant when Snyder requested volunteers and when Snyder offered him the position on October 5, 1993 and October 12, 1993. [J. Williams Dep. at 55].

Plaintiff admitted the offers were made, but testified that he declined to accept them because "the milk was already spilt". [J. Williams Dep. at 55]. It is unclear what Plaintiff means by this statement, since it is undisputed that the decision to promote Varner had not been made when Plaintiff declined Chief Snyder's invitation. [J. Williams Dep. at 55]. If Plaintiff had volunteered, or accepted Snyder's offer, Snyder could not have used Plaintiff's lack of experience at the position in deciding to promote Varner. It is irrelevant whether Plaintiff was voluntarily or involuntarily removed from the original rotation.[3] Even if he was skipped on the first rotation, Plaintiff was given a chance to serve as Acting Desk Sergeant, just as the other officers had done. Because Plaintiff

chose not to take advantage of the opportunity, he cannot now complain that Snyder improperly relied on Plaintiff's lack of experience in not promoting him.

Plaintiff also claims that his work record proves that he was qualified for the job. This fact is not in dispute since the Defendant admits that Plaintiff was one of seven applicants for the promotion who was rated as "highly qualified". [Aff. of Lisa K. Watkins, Exh. 6 to Def.'s Reply Br.]. However, the mere fact that Plaintiff was qualified does not mean that Snyder did not honestly believe Varner was better suited for the promotion, since six other candidates, including Varner, were also considered highly qualified. [*Id.*]

Additionally, Plaintiff asserts that his employment record was exceptional. He identifies various awards and certificates he has received for superior performance at his position, as well as numerous favorable evaluations. However, Varner had received higher evaluations than Plaintiff, [Aff. of Lisa K. Watkins, Exh. 6 to Def.'s Reply Br.], and had also received numerous awards and commendations. [Suppl. Aff. of Richard A. Snyder [sic], Exh. 4 to Def.'s Reply Br.].

Plaintiff does not dispute Varner's credentials or work history, nor does he claim that Snyder did not actually rely on those qualifications. Rather, his arguments attack the circumstances underlying Snyder's decision, and "[e]vidence contesting the factual underpinnings of the reason for the [employment decision] proffered by the employer is insufficient, without more, to present a jury question." *Hoeppner v. Crotched Mountain Rehabilitation Center, Inc.*, 31 F.3d 9, 17 (1st Cir.1994) (citation omitted) (alterations in original). "We do not judge whether the employer's decision was prudent, fair, or rational; rather, the issue is whether the Plaintiff has produced evidence indicating that the employer's proffered reason for its action was fabricated." *Verney v. Dodaro*, 872 F.Supp. 188, 196 (M.D.Pa.1995) (Caldwell,

---

**3.** Such a fact would be relevant if, for instance, Plaintiff was never given another chance to serve as Desk Sergeant, and Chief Snyder decided not to promote him based on his lack of experience as Desk Sergeant. However, that is not what occurred. Plaintiff was given an opportunity to gain experience as Desk Sergeant, but voluntarily chose not to accept it.

J.). Plaintiff has failed to produce any evidence that could lead a jury to believe that Snyder's proffered reasons for denying Plaintiff the promotion were fabricated.[4]

2. *Was discrimination "more likely than not" the reason for the denial of the promotion?*

■ Plaintiff also argues that there was other "evidence of pretext." We construe this argument to mean that this evidence makes it more likely than not that discrimination was the real reason Plaintiff was not promoted. First, Plaintiff asserts that black males were underrepresented in the position for which he applied, and in general at high ranking positions at the DDRE.[5] Apparently, Plaintiff believes that the lack of minority employees at higher level positions could lead a jury to conclude that the reason he was denied a promotion was because he was a minority. However, the mere fact that minorities are underrepresented is not evidence of discrimination, and does not make it "more likely than not" that Plaintiff was denied the promotion. Next, Plaintiff claims that two co-workers testified that they did not believe the Plaintiff was given equal consideration for the promotion. However, there is no evidence that these employees had any independent knowledge of the rationale behind the DDRE's promotion decisions.

Defendant has offered legitimate, non-discriminatory reasons why Plaintiff was not promoted. Plaintiff has failed to show that these reasons were a mere pretext for discrimination, or that it is more likely than not that the real reason for the employer's decision was because of Plaintiff's race. Therefore, Plaintiff has not carried his burden, and his claim must be dismissed.

C. Retaliatory Discrimination

■ "An employer violates Title VII of the Civil Rights Act when he discriminates against any employee who has 'made a charge ... in an investigation, proceeding, or hearing under this subchapter.'" *Ruggles v. California Polytechnic State University,* 797 F.2d 782, 784 (9th Cir.1986) (citing 42 U.S.C. § 2000e–3). To establish a prima facie case of reprisal discrimination, the Plaintiff must show that: 1) he engaged in a protected activity; 2) some adverse action was subsequently taken against him; and 3) there was a causal link between the adverse employment decision and protected activity. *Jalil v. Avdel Corp.,* 873 F.2d 701, 708 (3d Cir.1989), *cert. denied,* 493 U.S. 1023, 110 S.Ct. 725, 107 L.Ed.2d 745 (1990).

In the present action, it is unclear what conduct by the Defendant allegedly amounts to retaliation. In his amended complaint, Plaintiff's sole allegation with respect to retaliation is that "[u]pon Plaintiff's request for a final resolution of his [EEO] complaints, the Equal Employment Officer staged a confrontation with Plaintiff in retaliation for the complaint filing which has resulted in a one-day disciplinary suspension." [Pl.'s Amended Compl. ¶ 8(f) ]. However, in his brief in opposition to summary judgment, the list of retaliatory acts also included suspending Plaintiff without an investigation on October 23 and 24, 1993 and subjecting him to a fitness-for-duty medical examination, as well as suspending him for one day for the alleged confrontation with Mr. Peterson. [Pl.'s Br. in Opp'n to S.J. at 7]. All of these claims of retaliation arise from the same incident: the alleged confrontation with the EEO Officer.

■ Defendant argues that the court lacks subject matter jurisdiction over this claim because Plaintiff failed to exhaust his administrative remedies. *See* 29 C.F.R. § 1614.105(a)(1). Specifically, Defendant contends that the alleged confrontation with the EEO manager, and the subsequent action taken against the Plaintiff, was never the subject of a formal EEO complaint. Plaintiff does not contest the fact that this incident was not investigated[6], but instead

---

4. Plaintiff does not dispute Defendant's claim that Snyder relied upon the recommendations of the shift captains in deciding to promote Varner, and does not attack the truthfulness of that purported reliance.

5. While this fact might be relevant to a claim of disparate impact under Title VII, Plaintiff has not advanced such a claim.

6. Plaintiff did advance one retaliation claim, the one-day suspension, in a formal EEO complaint. However, the claim was dismissed from his EEO

**846**

argues that it would be a waste of judicial resources if we were to dismiss the claim now. While we agree that dismissal of this claim for investigation by the EEO office may result in a waste of resources, we have no choice but to dismiss claims over which we lack subject matter jurisdiction. *See Joyce v. United States,* 474 F.2d 215, 219 (3d Cir. 1973); *Rode v. United States,* 812 F.Supp. 45, 47 (M.D.Pa.1992) (Nealon, J.). Until Plaintiff files a formal EEO complaint and his claims are investigated, they are not ripe for determination by this court. *See Waiters v. Parsons,* 729 F.2d 233, 237 (3d Cir.1984); 29 C.F.R. § 1614.105(a)(1).

### D. Hostile Work Environment Discrimination

■ Plaintiff's final claim under Title VII is that the harassment he endured at the DDRE was so severe that it affected a term, condition, or privilege of his employment. In *Harris v. Forklift Sys., Inc.,* — U.S. —, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993), the Supreme Court addressed the hostile work environment theory of harassment, stating that Title VII is violated where "the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' ... that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment....'" *Id.* at —, 114 S.Ct. at 370, 126 L.Ed.2d at 301 (internal citations omitted). Although the claim in *Harris* involved sexual harassment, the hostile work environment theory applies equally to racial harassment. *See, e.g., West v. Philadelphia Electric Company,* 45 F.3d 744, (3d Cir.1995); *Rogers v. EEOC,* 454 F.2d 234 (5th Cir.1971), *cert. denied,* 406 U.S. 957, 92 S.Ct. 2058, 32 L.Ed.2d 343 (1972).

■ "[A]n employer violates Title VII simply by creating or condoning an environment at the workplace which significantly and adversely affects [the psychological well-being] of an employee because of his race or ethnicity, regardless of any other tangible

job detriment to the employee." *Dickerson v. State of N.J., Dept. of Human Services,* 767 F.Supp. 605, 613 (D.N.J.1994) (alteration in original) (citing *Walker v. Ford Motor Co.,* 684 F.2d 1355, 1358 (11th Cir.1982)). To establish a claim for hostile work environment, the Plaintiff must demonstrate that: (1) employees suffered intentional discrimination because of their race; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same race in that position; and (5) respondeat superior liability existed. *Andrews v. City of Philadelphia,* 895 F.2d 1469, 1482 (3d Cir. 1990) (claim for sexually hostile work environment claim under Title VII).[7] "In determining if a work environment is 'hostile' or 'abusive', courts look to the totality of the circumstances, including: the frequency and severity of the conduct; whether the conduct is physically threatening or humiliating, or merely an offensive utterance; and whether the conduct unreasonably interferes with the victim's work performance." *Pittman v. Correctional Healthcare Solutions, Inc.,* 868 F.Supp. 105, 108 (E.D.Pa.1994) (citing *Harris,* — U.S. at —, 114 S.Ct. at 371, 126 L.Ed.2d at 302).

■ Plaintiff has not proved that he, or any other DDRE employee, was subjected to intentional discrimination because of his race. He argues that the testimony of two co-workers, Stanley Eddy and James Dick, supports his claim that there existed a racially hostile work environment. However, even granting all inferences in Plaintiff's favor, Eddy's belief that Plaintiff did not get the same treatment as non-minority patrolmen and Dick's statement that Plaintiff was not liked by management are insufficient to establish harassment that was "sufficiently pervasive so as to alter the conditions of employment and create an abusive working environment." *Walker,* 684 F.2d at 1359 (citation omitted). Neither individual testified that they witnessed, or knew of, any specific in-

claim because it was pending in this case. [Exh. 16 to Pl.'s Br. in Opp'n to S.J.]; *see also* 29 C.F.R. § 1614.105(a)(1).

7. The standards for a claim of hostile environment based upon racial harassment are identical to those of a hostile environment claim based on sexual harassment. *West,* 45 F.3d at 753, n. 7.

stances of racial harassment by management or other employees. Plaintiff himself failed to allege that he was subjected to overt acts of harassment, such as racial slurs or derogatory comments in the workplace.

The examples that Plaintiff cites as evidence of a racially hostile work environment are the incident with Richard Nornhold at the commissary; the denial of permission to go to the health clinic at 9:00 a.m.; the superglue in Plaintiff's lock and the apparent inadequate investigation of the incident; the accusation that he failed to close a gate at the DDRE; and the alleged staged confrontation with the EEO manager. However, not one of these incidents contains a shred of evidence that could lead a reasonable jury to conclude that the action was based on racial animus. Only Plaintiff's conclusory allegations link these incidents to his race. To withstand summary judgment, the Plaintiff must do more than "simply reassert factually unsupported allegations contained in [his] pleadings." *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir.1989) (citation omitted). He "must present *affirmative evidence* in order to defeat a properly supported motion for summary judgment." *Id.* (emphasis in original) (citation omitted). Plaintiff has failed to identify any evidence, other than his own subjective conclusions, that he was harassed because of his race, and therefore has not satisfied the first element in a hostile work environment claim.

In addition, he has identified only five occurrences over a seven year period in which he claims he was harassed. These incidents, if true, do not show harassment that was "pervasive and regular". *Andrews*, 895 F.2d at 1482. Additionally, Plaintiff does not claim that racial slurs or any derogatory comments were made either to him or other employees. Rather, he has only his subjective belief that the alleged incidents of harassment directed at him were as a result of his race. A successful claim for hostile work environment includes both a subjective

and objective standard. *Id.* We do not believe that a reasonable person of Plaintiff's race, placed in Plaintiff's position, would have found the incidents hostile or abusive.[8]

### III. *Conclusion*

We recognize that summary judgment is not appropriate in many discrimination and harassment cases since the state of mind of the employer is often at issue. However, in the present case, the Plaintiff has failed to produce any evidence that the employer's professed reasons for not promoting him were pretextual. In addition, he has not identified any competent evidence that he suffered pervasive racial harassment during the course of his employment. We conclude that no reasonable jury could conclude that the Plaintiff was discriminated against because of his race, or that he was subjected to a hostile work environment.

An appropriate order will be entered.

### *ORDER*

AND NOW, this 17th day of February, 1995, upon consideration of Defendant's motion to dismiss, or in the alternative summary judgment, filed December 15, 1994, it is ordered that:

1. Plaintiff's claim of retaliatory discrimination is dismissed for lack of subject matter jurisdiction (Plaintiff failed to exhaust his administrative remedies).

2. Defendant's motion for summary judgment is granted as to all other claims.

3. The Clerk of Court shall enter judgment in favor of the Defendant and against the Plaintiff, and shall close this file.

---

8. It is not clear whether Plaintiff is also claiming that the incident with Richard Nornhold, his preclusion from going to the health clinic to have his blood pressure checked at 9:00 a.m., and his confrontation with the EEO manager, each amounted to a violation of Title VII. If so, that argument is frivolous. Plaintiff has not established a prima facie case of discrimination on any of these claims since he has failed to establish, *inter alia*, that non-members of the protected class were treated more favorably. *See Ezold*, 983 F.2d at 522.