**James W. KEISER, George M. Showers, Richard R. Vanhorn, and Richard E. Wilkin, on behalf of themselves and all other members of the Churches of God, Plaintiffs,**

v.

## MATAMORAS COMMUNITY CHURCH, Defendant.

No. CIV.A. 1:CV 01–2136.

United States District Court, M.D. Pennsylvania.

June 11, 2002.

David E. Lehman, McNees, Wallace & Nurick, Curtis N. Stambaugh, McNees, Wallace, & Nurick, Harrisburg, PA, for plaintiffs.

Stephen L. Grose, Keefer, Wood, Allen & Rahal, LLP, Harrisburg, PA, for defendant.

### MEMORANDUM AND ORDER

KANE, District Judge.

This action brought by individual members of the Churches of God seeks to enjoin the Matamoras Community Church from employing ministers not credentialed by the Churches of God and otherwise practicing their faith in a manner inconsistent with the Constitution and bylaws of the Churches of God. Specifically, Plaintiffs seek to enjoin Defendant from "using church property in ways not sanctioned by the Churches of God." Compl. at p. 8. Now before the Court is Defendant's motion for summary judgment. The motion has been fully briefed, and the Court held oral argument on March 14, 2002. For the reasons discussed below, the motion will be granted.

### I.  Background

#### A.  History of the Church of God and Matamoras Community Church

The Church of God was founded in Harrisburg, Pennsylvania in 1825 as a hierar-

chical Christian denomination. The Matamoras Church of God was founded nearby in 1844. From 1844 until 1994, the Matamoras Church of God was a member of the East Pennsylvania Conference (now called the Eastern Regional Conference) of the Churches of God.[1] In 1961, while affiliated with the Eastern Regional Conference, and the larger General Conference of the Churches of God, Matamoras incorporated and soon thereafter purchased 3.6 acres of land. The real estate was at all times held in the name of the corporation, and not in trust for the General or Eastern Conferences. Matamoras built a church on this property; construction was completed in 1968.

In July of 1994, the General Conference amended its constitution to provide that all property held by its member churches must be held in trust for the Churches of God. As a result of this amendment, Matamoras withdrew from the Eastern Regional Conference of the Churches of God and reincorporated as the Matamoras Community Church. The Matamoras Community Church continued to occupy the same property as prior to the reincorporation. Following the withdrawal of Matamoras from the Eastern Regional Conference, the Eastern Regional Conference voted to dissolve Matamoras. This decision was confirmed by the General Conference. Plaintiffs allege that this action reverted the Matamoras property to the General Conference, and that Defendant's continued use of the property in ways not sanctioned by the denomination violates Article 17.03 of the Constitution of the General Conference of the Churches of God [2].

### B. State Litigation

On February 26, 1996, the East Pennsylvania Conference of the Churches of God filed suit in the Dauphin County Court of Common Pleas against Matamoras Community Church in ejectment, replevin and accounting seeking immediate possession

---

1. The two names, "East Pennsylvania Conference" and "Eastern Regional Conference" are both used in this memorandum, and both refer to the same governing body.

2. Article 17.03 provides:
   The polity of the denomination as declared in *Winebrenner v. Colder*, 43 Pa. 244 (1862), establishes that a congregation belonging to the Churches of God and subject to the constitution, faith and doctrines thereof, cannot use its property for a purpose other than a purpose sanctioned by the denomination. A particular church affiliated with the denomination, or a majority of a congregation, or all the members thereof, cannot sever its connection with the Churches of God or set itself up as an independent church, congregation or corporation without the consent of the denomination. As restated in Yahn, *Polity of the Churches of God in North America,* if a factional contest for the possession or control of property thereof arises in a local church, the property by law and by denominational polity is subject to the control of the true members of the congregation (and of the corporation if incorporated) consisting of those true to the doctrines and practices of the Churches of God and loyal to the denominational polity or government. And if there is none true and loyal the larger body of which the local church is a part may exercise needful control over such bethel and such local church property. The government and polity of the Churches of God is representative and presbyterial in character and the denomination as a whole, acting through its duly constituted Conference and General Conference judicatories, exercises the ultimate rights of control. The whole presbyterial polity and system of government of the Churches of God is based upon the principle that all the members are one denomination and that the larger body of members shall finally determine or prevent all controversies of the smaller, shall have powers of visitation for whatever pertains to spiritual welfare, and shall advance the welfare of the churches and conferences through a three-tier ascending series of judicatories of local church, conference, and General Conference.

of all personal property and realty owned by Matamoras Community Church. After a three day trial in March, 1999, the jury found in favor of Matamoras Community Church. The question posed to the jury on the verdict slip, and answered in the negative was: Has the East Pennsylvania Conference proven by a preponderance of the evidence that Matamoras congregation intended to create a trust of its assets in favor of the Conference? Judgment was thus entered for Defendants.

Plaintiff filed a motion for judgment notwithstanding the verdict or in the alternative for a new trial; the court denied that motion on December 10, 1999. In denying the motion, the Dauphin County Court of Common Pleas examined the Constitution of the General Conference in relation to the actions of Matamoras. The court found that the deed conveying the property purchased in 1961 was drafted to avoid any trust language, and thus "contravened the constitutional directive then in place[.]" [3] Dec. 10, 1999 Op. at 4. The court further noted that the Conference took no steps to correct or challenge the action. *Id.* The court examined Pennsylvania law regarding the creation of a trust, and accordingly looked to the actions of Matamoras *vis a vis* the property. Because the court found that there was sufficient evidence in the record that Matamoras did not intend to create a trust, the court upheld the jury verdict. *Id.* at 7–8.

The East Pennsylvania Conference of the Churches of God appealed the decision to the Commonwealth Court, which affirmed the trial court in a memorandum opinion filed on January 16, 2001. The East Pennsylvania Conference filed a petition for allowance of appeal with the Pennsylvania Supreme Court, which was denied on July 11, 2001.

The present case was filed by the Plaintiffs on November 13, 2001. The Plaintiffs are individual members of the Churches of God, and are seeking class certification to proceed on behalf of all other members of the Churches of God. However, none of the Plaintiffs is a member of the Matamoras Community Church, nor was any Plaintiff a member of the Matamoras Church of God prior to the rift with the Eastern Regional and General Conferences.

## II. Discussion

### A. Standard of Review

Federal Rule of Civil Procedure 56 provides that summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–51, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court must view all facts and inferences in the light most favorable to the nonmoving party. *See Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). *See also Williams v. Perry*, 907 F.Supp. 838, 842 (M.D.Pa.1995).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving parties, the

---

**3.** At the time Matamoras incorporated in 1961, and purchased the property in question, the Constitution of the General Conference provided as follows:

> All church property shall be deeded to the elders or trustees in trust for the Churches ... [and] ... in case the Church shall become extinct, or cease to maintain an organization in harmony with the doctrines, customs or polity of the Churches of God, it shall become the property of the Conference....

Dec. 10, 1999 Op. at 3–4. *See* Constitution Article 8.02 (same provision, as amended).

non-moving parties may not simply sit back and rest on the allegations in her complaint; instead, they must "go beyond the pleadings and by [their] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (internal quotations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." *Id.* at 322, 106 S.Ct. 2548.

### B. Jurisdiction

■ Plaintiffs assert that this Court has both diversity and federal question jurisdiction. Defendant claims that the Court has neither. Congress has granted district courts diversity jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000 exclusive of interests and costs, and is between ... citizens of different States...." 28 U.S.C. § 1332. The named Plaintiffs in this putative class action are residents of Ohio and Michigan. Plaintiffs claim that the jurisdictional amount is met because each Plaintiff is seeking to prohibit Defendant from using property valued at $800,000. *Zahn v. International Paper Co.* held that Plaintiffs may not aggregate claims in order to satisfy the amount in controversy requirement of Section 1332. 414 U.S. 291, 294–95, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973). However, where the Plaintiffs are attempting "to enforce a single title or right," the Court looks to the value of the property. *Id.* at 294, 94 S.Ct. 505. Here, the Plaintiffs are attempting to enforce what they believe to be their rights as members of the Church of God to ensure that the property in question is used in accordance with the governing rules of the Churches of God. Whether these are the proper Plaintiffs to do so is an issue of standing and will be addressed as such. Looking solely at the amount in controversy, the singularity of the interest in one property and the diversity of the named Plaintiffs from the Defendant, this Court has diversity jurisdiction over the claims presented. Therefore, the Court need not consider whether it has federal question jurisdiction based on the constitutional claims set forth in the complaint.

### C. Collateral estoppel

■ Collateral estoppel precludes relitigation of a question of law or an issue of fact that has already been litigated and adjudicated finally in a court of competent jurisdiction. *See Day v. Volkswagenwerk Aktiengesellschaft*, 318 Pa.Super. 225, 464 A.2d 1313, 1318 (1983). "Federal courts must give a state court judgment the same preclusive effect as would the courts of that state." *Swineford v. Snyder County, Penna.*, 15 F.3d 1258, 1266 (3d Cir.1994). Under Pennsylvania law, collateral estoppel, also known as issue preclusion, applies where the following four factors are met:

(1) An issue decided in a prior action is identical to one presented in a later action; (2) The prior action resulted in a final judgment on the merits; (3) The party against whom collateral estoppel is asserted was a party to the prior action, or is in privity with a party to the prior action; and (4) The party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action.

*Jones v. United Parcel Service*, 214 F.3d 402, 405 (3d Cir.2000) (quoting *Rue v. K-Mart Corp.*, 552 Pa. 13, 713 A.2d 82, 84 (1998)). As there can be no dispute that the jury verdict in the prior litigation constituted a decision on the merits, only the first, third and fourth prongs are at issue here.

■ Because the Dauphin County action for ejectment and replevin was founded on Plaintiff's contention that the constitution of the Churches of God deemed all property owned by affiliate churches held in trust for the General Conference, the issue posed to the jury was whether the Defendant held its property in trust for the East Pennsylvania Conference. Plaintiffs argue that because the question presented was narrowly drawn to the issue of whether the property was held in trust, collateral estoppel does not apply. Instead, Plaintiffs here frame the issue differently: whether Defendant is using its property in ways not sanctioned by the constitution and governing rules of the General Conference. Thus, Plaintiff argues, this action is distinguishable from the prior one as it is about the use, not the ownership, of the property at issue. The attempted distinction does nothing to remove the collateral estoppel bar to this refashioned claim. While the remedy sought may be different, the claims are the same. It is clear that to determine whether Plaintiffs are entitled to enjoin the nonconforming use of the Matamoras church, this Court would be called upon to decide the very ownership issue already determined by a jury.

■ Plaintiffs correctly point out that "[c]ollateral estoppel ... will not preclude the relitigation of an issue unless that issue is identical to one presented and resolved in a prior lawsuit." *Northeast Women's Center, Inc. v. McMonagle,* 665 F.Supp. 1147, 1152 (E.D.Pa.1987). Further, collateral estoppel is not appropriate when the current claims require a different analysis of the facts. *See Hawksbill Sea Turtle v. Federal Emergency Management Agency,* 126 F.3d 461, 477 (3d Cir. 1997). However, regardless of how the claims are framed, the issue presented in both the prior and present litigations is the same: who is entitled to possess and use the real estate and church now occupied by Matamoras. The Dauphin County jury was called upon to decide the same question. It having been decided definitively and finally, the first prong in the collateral estoppel inquiry has been met.

■ This action also satisfies the privity prong of the collateral estoppel analysis. Privity is "[t]he connection or relationship between two parties, each having a legally recognized interest in the same subject matter...." Black's Law Dictionary, 7th Ed. at 1217 (1999). "Courts have typically found privity to exist in three circumstances: 1) where the nonparty has succeeded to, or shares a concurrent right to the party's interest in, property, 2) where the nonparty controlled the prior litigation, and 3) where the party adequately represented the nonparties' interests in the prior proceeding." *Buzzanco v. Lord Corp.,* 173 F.Supp.2d 376 (W.D.Pa.2001) (citing *First Options of Chicago v. Kaplan,* 913 F.Supp. 377, 383–84 (E.D.Pa.1996)). Plaintiffs argue that there is no privity because they are not members of the Eastern Regional Conference, the plaintiff in the Dauphin County action. However, the hierarchical nature of the Churches of God belies this argument. The Plaintiffs clearly state:

> The Churches of God denominational structure has a supreme judicatory body, The General Conference, and regional subordinate judicatory bodies. Here, the regional subordinate judicatory body is the Eastern Regional Conference. Local churches (each governed by its own administrative council) are subject to the regional and to the national governing bodies.

Br. in Opp. at 1. *See also* complaint at ¶ 11.[4] Because the Eastern Regional Conference is clearly bound by the constitution

---

**4.** Paragraph 11 of the complaint reads:

> Plaintiffs are members of the Churches of God, a religious denomination, whose su-

of the General Conference, it is only able to represent the interests of the General Conference in court. Therefore, this Court finds the two conferences to be in privity with each other. For the purposes of this suit, whereby Plaintiffs attempt to enforce provisions of the constitution of the General Conference, this Court finds that Plaintiffs are in privity with the General Conference, and therefore the Eastern Regional Conference.[5]

Finally, the individual Plaintiffs, as members of the General Conference, are in privity with that governing body. The individual Plaintiffs would have no relationship, right or interest in the property of the Matamoras Community Church, or in the manner in which it is used, but for their relationship with the General Conference. For these reasons, the Court is certain that the Eastern Regional Conference fully and satisfactorily represented the interests of the General Conference, which in turn represented the interests of the individual members of the General Conference, who are the Plaintiffs here. The parties have the same interest—to reclaim the use of the Matamoras property in order to ensure that it is used consistent with the constitution and bylaws of the General Conference of the Churches of God.

Collateral estoppel prevents a party unhappy with a judicial decision from seeking out another judicial forum to adjudicate the same issue. Here, it is clear that collateral estoppel precludes this Court from adjudicating the issues now presented. Therefore, the Court will grant Defendant's motion for summary judgment.

### III. Order

AND NOW, therefore, **IT IS ORDERED THAT** Defendant's motion for summary judgment is **GRANTED**. The Clerk of Court shall enter judgment for the Defendant and against the Plaintiffs. The Clerk of Court shall close the file.

preme judicatory is the churches of God, General Conference. The superior regional judicatories include the Eastern Regional conference of the Churches of God, General Conference. The local judicatories, governed by church administrative councils, are Church of God congregations.

5. When arguing that they have standing to bring the present case, Plaintiffs attempt to assert, as they must, that they each have an interest in this suit separate and apart from the interest of the General Conference. However, Plaintiffs cannot show that they have standing to bring the case without arguing that they are, in fact, in privity with and sharing the same alleged injury as the General Conference. Plaintiffs assert that the Churches of God, and all of its individual members, have suffered from the secession of a one hundred fifty year old member congregation. Br. in Op. at p. 12. However, Plaintiffs are unable to state any injury suffered by the individual Plaintiffs that is not also shared by the General Conference, and that is not more properly brought by the General Conference on behalf of the individual members.